BAXTER, J., Concurring
I concur in the majority’s conclusion that the trial court’s failure to instruct the jury sua sponte to “view with caution” evidence that defendant told attempted rape/murder victim Ellen Hansen he wanted to rape her while pointing his gun at her during the crime, if error, was clearly harmless. (Maj. opn., ante, at pp. 392-393.) However, I question whether the so-called “cautionary instruction” would have been appropriately given on the basis of this statement in the first instance.
Surviving victim Steven Haertle testified defendant stated to his companion Ellen Hansen while pointing his handgun at them both, “ T want to rape you.’ ” (Maj. opn., ante, at pp. 345, 392.) Moments later, after Hansen told defendant, “No, I’m not going to let you,” defendant killed Hansen with two gunshot wounds to the head and then shot Haertle in the neck, apparently leaving him for dead. Haertle survived. The initial question is whether Haertle’s testimony relating defendant’s statement to Hansen of his intent to rape her (which formed the basis of defendant’s conviction of the attempted rape of Hansen) is the type of evidence that required the giving of the cautionary instruction sua sponte.
*426 The cautionary instruction is part and parcel of the standardized instructions defining admissions and confessions. (CALJIC Nos. 2.70, 2.71, 2.71.7.) The version of CALJIC No. 2.71 in effect at the time of defendant’s trial (4th ed. 1980 rev.) defined an admission as follows: “An admission is a statement made by defendant other than at his trial which does not by itself acknowledge his guilt of the crime(s) for which he is on trial, but which statement tends to prove his guilt when considered with the rest of the evidence, [f] You are the exclusive judges as to whether the defendant made an admission, and if so, whether such statement is true in whole or in part. If you should find that the defendant did not make the statement, you must reject it. If you find that it is true in whole or in part, you may consider that part which you find to be true. [*]]] Evidence of an oral admission of the defendant should be viewed with caution.” (Italics added.)
The final italicized sentence is the “cautionary” admonition. If a cautionary instruction was required at all in this case, it would have been that embodied in CALJIC No. 2.71.[1]
The trial court found defendant’s statement to Hansen of his present intent to rape her was not a confession, and impliedly concluded it was not an admission when denying the prosecution’s request to instruct with CALJIC No. 2.71. The question whether the statement was an admission to begin with, requiring the cautionary instruction, presents unique conceptual difficulties. Defendant’s statement to Hansen was certainly not an “admission” in the classic sense. It was not a preoffense statement of later intent to rape the victim. It was not a postoffense admission tending to prove defendant’s guilt *427 of a completed crime. Indeed, it was not made to a third party at all, but was instead directed to the victim of the crime during its commission. As the majority observe in the context of rejecting the claim that a corpus delicti instruction was required with regard to this statement, defendant’s statement of intent to rape Hansen “was part of the crime . . . .” (Maj. opn., ante, at p. 394.)
Intent to rape was a requisite element of the charged crime of attempted rape. On these facts, defendant’s statement to Hansen—“I want to rape you”—was the only direct evidence that “clearly established” the element of intent to rape required for the conviction of attempted rape. (Maj. opn., ante, at p. 387.) Under such circumstances, I question whether the defendant’s statement of present criminal intent, communicated directly to the victim and itself an integral “part of the crime,” can at the same time logically be construed as an “admission” tending to prove the defendant’s guilt of the completed crime so as to require sua sponte instruction in the cautionary language of CALJIC No. 2.71.
Assuming the statement does fall within the four comers of the definition of an admission, there are a number of considerations that, to my mind, undermine the logic of requiring that a cautionary instruction be given on the basis of such a statement. The majority view People v. Ford (1964) 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892] (Ford) as authority for the conclusion that a cautionary instruction was required even for an “admission” of this nature. I find Ford distinguishable, and question whether it should be deemed controlling here.
In Ford, several witnesses testified to oral statements the defendant had allegedly made just before and just after he murdered the victim, a deputy sheriff. “[One witness] testified that on the way to Crestón defendant said he wanted the bottle of liquor because he ‘needed the drink to get up his courage,’ and that defendant later fired the gun out of the car window because he ‘wanted to see how it shot.’ Both [that witness] and Mrs. Ford testified that on passing two parked police cars on the freeway defendant said, ‘they’d better not give me any trouble or they are going to lose’; that as they passed [Deputy Sheriff] Stahl’s car parked on the road defendant said, ‘he’d better not give me any trouble because he is going to lose’; that as defendant got out of the car to face Stahl he said, ‘that son-of-a-bitch had better not give me any trouble’; and that after firing the fatal shot defendant made a kicking motion and said, ‘that will be the end of you, you motherfucker.’ ” (60 Cal.2d at p. 799.)
This court reasoned in Ford that “[t]hese statements bore directly on the issue of defendant’s capacity to deliberate and premeditate sufficiently to *428 commit first degree murder. They constituted a substantial part of the evidence offered to establish the prosecution’s theory that the shooting of Stahl was deliberate and premeditated because defendant had formed an intent to kill any police officer who might interfere with his plans.” (60 Cal.2d at pp. 799-800.) We went on in Ford to reverse the defendant’s murder conviction for failure to give the cautionary instruction sua sponte in regard to those statements.
First, it should be noted that the trial court’s failure to give the cautionary instruction in Ford constituted a “fail[ure] to discharge its statutorily declared duty to give a cautionary instruction.” (Ford, supra, 60 Cal.2d at p. 800.) At the time Ford was decided, “[s]ection 2061 of the Code of Civil Procedure declare[d] in relevant part that the jury ‘are . . . to be instructed by the court on all proper occasions: ... 4. That... the evidence of the oral admissions of a party [ought to be viewed] with caution.’ ” (60 Cal.2d at p. 799.) Ford's reversal of the defendant’s murder conviction was therefore expressly based on a determination that the trial court had failed to discharge its statutory duty to give the cautionary instruction.
Code of Civil Procedure section 2061 was thereafter repealed effective January 1, 1967, at which time the Evidence Code was enacted. No similar provision requiring the giving of the “cautionary” admonition was incorporated into the new Evidence Code. This court did, however, later conclude that “the repeal does not affect the decisional law. [Citations.]” (People v. Beagle (1972) 6 Cal.3d 441, 455, fn. 4 [99 Cal.Rptr. 313, 492 P.2d 1].) It is nonetheless a fact that, undoubtedly due to the statutory requirement in effect when Ford was decided, the People in Ford conceded the error in the trial court’s failure to give the cautionary instruction, and instead argued only that the error was nonprejudicial. (Ford, supra, 60 Cal.2d at p. 799.) The entire discussion of the cautionary instruction issue in Ford, as it related to the particular facts of that case, was therefore formulated in the shadow of the People’s concession that there had been statutory instructional error. In short, the Ford court had no occasion to directly consider substantive arguments that it might not have been error to fail to give the cautionary instruction in the first instance regarding those of defendant’s admissions, if any, that were part of the crime itself.
Second, there are some noteworthy distinctions to be drawn between the facts of Ford and the facts of this case. Defendant’s statements at issue in Ford were made just before and just after the minder itself. Those statements made before the murder were uttered to third parties and not to the victim of the crime. The last statement was muttered by defendant after he had fired the fatal shot felling the victim. The defendant’s statements in Ford are thus *429 not as readily characterized as part of the crime itself, as was Carpenter’s statement to Hansen that he wanted to rape her, made while he pointed a gun at her moments before he shot her to death. (See also People v. Lopez (1975) 47 Cal.App.3d 8, 12 [120 Cal.Rptr. 562] [interpreting Ford as requiring cautionary instruction for defendant’s oral admissions made “either before or after the crime was committed . . .”].)
As explained above, I find it conceptually difficult to view defendant’s contemporaneous statement to Hansen of his intent to rape her as an “admission” of the type requiring the giving of CALJIC No. 2.71. In particular, I believe that to have instructed the jurors to view defendant’s contemporaneous statement “with caution” would have improperly required them to weigh or evaluate the substantive content of defendant’s statement with an undue measure of caution or skepticism. This is so because the cautionary language utilized in CALJIC No. 2.71, and related instructions— that “[e]vidence of an oral admission of the defendant should be viewed with caution”—is broader than the purpose for which it was originally intended.
We have repeatedly observed that “[t]he purpose of the cautionary instruction is to assist the jury in determining if the statement was in fact made.” (People v. Beagle, supra, 6 Cal.3d at p. 456; People v. Pensinger (1991) 52 Cal.3d 1210, 1268 [278 Cal.Rptr. 640, 805 P.2d 899]; People v. Bemis (1949) 33 Cal.2d 395, 400 [202 P.2d 82].) The majority acknowledge this to be the purpose behind the cautionary instruction. (Maj. opn., ante, at pp. 392-393.) Indeed, for this reason, it has long been recognized that the cautionary instruction need not be given when the statement in question was tape-recorded. (People v. Hines (1964) 61 Cal.2d 164, 173 [37 Cal.Rptr. 622, 390 P.2d 398].)
If the cautionary language utilized in CALJIC No. 2.71[2] instructed the jury to view with caution evidence that a defendant’s oral admission “was in fact made” (People v. Beagle, supra, 6 Cal.3d at p. 645; People v. Pensinger, supra, 52 Cal.3d at p. 1268), then to my mind such language would be more appropriately tailored to the specific purpose for which the cautionary admonition was designed. Instead, the cautionary language currently in use instructs the jury broadly, and unconditionally, that “[e]vidence of an oral admission of the defendant should be viewed with caution.” (CALJIC No. 2.71.) A juror dutifully seeking to comply with this admonition might conclude he or she must view the substantive content of the defendant’s extrajudicial admission “with caution” for any and all purposes, including *430 when weighing and evaluating the truth of the matters asserted in the statement.
I can conceive of no valid reason in law, logic, or fairness why the substantive content of a defendant’s oral admissions—i.e., the truth of the matters asserted therein—should be viewed with any special degree of caution or skepticism. Consider, for example, that defendant’s statement of intent to rape Hansen, itself a part of the criminal episode, was by its very nature excepted from the hearsay proscriptions of the Evidence Code on various policy grounds, because it was (1) a “spontaneous statement” made by defendant, the declarant, in an effort to explain a “condition” perceived by him, and was made while under “the stress of excitement” of his ongoing commission of the crime (Evid. Code, § 1240); (2) a “contemporaneous statement,” made by defendant, the declarant, in an effort to explain his “conduct” of pointing a gun at Hansen, and “[w]as made while the declarant was engaged in such conduct” (id., § 1241); (3) a statement of defendant’s, the declarant’s, “then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling . . .),” which was admitted to prove his state of mind and the nature of his conduct, both of which were in issue in the action (id., § 1250); and (4) a declaration against interest, to the extent defendant’s statement of intent to rape Hansen subjected him to the risk of criminal liability, and he was further unavailable as a witness (because he had exercised his privilege not to testify at the guilt phase of trial) (id., §§ 1230, 240).
I list each of these arguably applicable hearsay exceptions only to illustrate that, for a variety of policy reasons, the law looks upon the substance of a statement in the nature of that which Carpenter made to Hansen during this crime as inherently reliable or trustworthy. Common sense dictates that to the extent the cautionary language of CALJIC No. 2.71 could have been understood by the jurors as requiring them to “view with caution” the truth of the matters asserted in Carpenter’s statement, i.e., his underlying desire and intent to rape Hansen, as opposed to simply requiring them to view with caution evidence that he actually made or uttered the statement, its effect would have been unwarranted. Yet the broad language of the cautionary admonition embodied in CALJIC No. 2.71 is susceptible of being understood by the jury in just that fashion, for it unconditionally instructs the jurors that, “[ejvidence of an oral admission of the defendant should be viewed with caution.”
The facts relevant to this instructional issue call to mind this court’s celebrated decision in People v. Rincon-Pineda (1975) 14 Cal.3d 864 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845], in which we abolished one *431 of the more egregious evidentiary biases against rape victims, commonly known as Lord Hale’s dictum. The offensive language was embodied in then CALJIC No. 10.22 (3d ed. 1970), and had instructed the jury in rape cases that because rape is a charge easily made and difficult to defend, a rape victim’s testimony should be “viewed with caution.” Here, the last words Hansen heard before being killed by defendant with two bullets to her head was his statement: “I want to rape you.” It is ironic indeed that defendant’s statement to that effect should require the jury to be instructed, sua sponte, that such “admission” be broadly and unconditionally “viewed with caution.”
Appellant’s petition for a rehearing was denied June 18, 1997.

 CALJIC No. 2.70 is a closely related instruction to be given when the evidence suggests the defendant’s extrajudicial statement might be a confession or an admission. The version of CALJIC No. 2.70 in effect at the time of defendant’s trial (4th ed. 1980 rev.) defined confessions and admissions for the jury as follows: “A confession is a statement made by a defendant other than at his trial in which he has acknowledged his guilt of the crime(s) for which he is on trial. In order to constitute a confession, such a statement must acknowledge participation in the crime(s) as well as the required [criminal intent] [knowledge], [¶] [A statement made by a defendant other than at his trial is not a confession but an admission whenever the statement does not by itself acknowledge his guilt of the crime(s) for which he is on trial, but which tends to prove his guilt when considered with the rest of the evidence.] [¶] You are the exclusive judges as to whether the defendant made a confession [or an admission], and if so, whether such statement is true in whole or in part. If you should find that the defendant did not make the statement, you must reject it. If you find that it is true in whole or in part, you may consider that part which you find to be true. [¶] Evidence of an oral confession [or oral admission] of the defendant should be viewed with caution.” (Italics added.) Once again, the last italicized sentence embodies the “cautionary” charge.
Although the prosecution requested that the jury be instructed alternatively with either CALJIC No. 2.70 or No. 2.71, defendant’s statement to Hansen during the crime that he wanted to rape her, although establishing the requisite element of intent for the crime of attempted rape, did not itself constitute a confession to a completed crime.

 As noted, a nearly identical “cautionary” admonition is incorporated in CALJIC No. 2.70, defining confessions and admissions. (See also CALJIC No. 2.71.7 [evidence of an accused’s preoffense statements].)